Thank you. We are here for a special hearing in the appeal from an injunction and the request for a stay in the case of National Urban League et al versus Ross number 20-16868 and if I could just ask counsel when you're not but when you are speaking remember to unmute it so we can hear your arguments and with that you may begin. Thank you your honors may it please the court Sobhan Joshi on behalf of the government appellants defendants and move-ins. I'd like to reserve four minutes for rebuttal if I might. We think the injunction should be stayed because plaintiffs in the district court are wrong on the merits and wrong on the equities. Two points on the merits. First the district court really just turned the APA on its head by ordering the agency to violate a conceivably lawful binding and clear statutory deadline. That to our knowledge is unprecedented and highly extraordinary. In fact the court made clear at a hearing that the agency can't even quote propose internal plans that are geared towards meeting that clear unambiguous lawful and binding statutory deadline and that brings up the second issue on the merits which is the agency's plans including these internal timelines and processes are simply not final agency action under the SUA case and under standard APA principles and this is evidenced by the fact that the agency has changed the deadlines multiple times along the way. First they had a COVID plan then they pulled it into September 30th and they moved it to October 5th which is today and it really shouldn't be subject to judicial second-guessing and micromanagement. I'd like to ask you a question about the the statutory deadline because that seems to me to be really the heart of your argument and I want to leave aside for the moment the jurisdictional issue that you've raised or the appealability issue that you've raised about the APA and it seems to me that in your papers you really are not challenging the district court's findings about the what I would shorthand call the slapdash way in which the replan was put together rather it seems to me that you're challenging only the remedy and there the question I have is this if the October 31st deadline were to remain but there were no requirement to extend beyond December 31st how would that be legally problematic it might be a practical impossibility but why would it be legally impossible if only the December 31st deadline were not required to be left aside. So two things first of all as you and more important there's really no basis to hold us in the field till October 31st given where we are but I want to also that's that's not my question though that's not my question I want you to assume for the sake of this question that the court otherwise found that the change from October 31st was arbitrary and capricious and that that is unlikely that that finding or that is unlikely to be upheld. So the only way that presumption would be met is if you thought that the agency didn't have to meet the deadline and this goes back to the first part of your question let me explain is that neither plaintiffs nor the district court ever said or have presented anything to suggest that the agency acted unreasonably or arbitrarily given the statutory deadline in other words if you take as a given that the agency has to meet the binding and lawful deadline there's nothing to suggest that we acted arbitrarily and capriciously within those grounds that the premise of the district court's finding and and your honor's question with respect is that uh the agency had to consider blowing the deadline and now if you do that well counsel it did excuse me it did more than consider it it adopted a COVID plan that clearly extended months beyond the December 31st deadline that it's not speculative that that was the agency's previous position and it requested an extension and then withdrew that request from congress so I don't understand why you think that the agency has always taken a position that that's sacrosanct it clearly has not the agency's COVID plan was premised on a conditioned precedent congress is extending the deadline the agency can't tell congress what to do congress knows what to do congress is aware of the pandemic when it became apparent in july late july that congress was not going to extend the deadline the agency had to react to it so the agency's COVID I'm sorry you keep using that sentence it became apparent that congress wasn't going to extend the deadline but it appears that the there's nothing in the record to suggest that the reason other than the reason it didn't happen is because the request was withdrawn uh so uh I disagree with that I think I would point you to Mr. Fontenot's declaration that's in the record and I think we attached it to our uh to our state brief uh so this would be I think paragraph 81 addendum page 107 um you know Mr. Fontenot makes clear that they were they had a plan for COVID they were hoping that they would get the extension of the deadline and when it became apparent in july that that wasn't going to materialize they had well you know obviously and this just goes to the non-final agency action point but like at some point you have to make a call right like they have a lot of work to do this is a massively complex undertaking you've got a december deadline staring you in the face you hope it gets moved but at some point you realize congress isn't going to act I think uh senator mcconnell might have made some statement to the times that suggested that it wasn't going to get out of a senate committee you know at some point you have to make a call just like I don't know what it did um there's nothing in the record that suggests that the anything but the reason that it didn't happen is because the request was moved on well as I just said the the the only reasons in the record we know are that the agency at some point had to start making a move and replanning things when it felt that it wasn't likely to get the extension and that's been borne out we still don't have an extension and I think the agency's plans have been proven yeah the record is full of statements by bureau officials that there was no way they were going to meet the deadline that is to say whether or not they got congressional changes they just said we're not going to be able to meet the deadline and the covid plans that wanted 120 days more so they could meet a new deadline but it's I think plenty of evidence in the record to show that the bureau itself said we're not going to meet this deadline period there are there are statements like that when they were trying to negotiate and request the deadline from congress and I mean are you when you say statements like that when they're trying to negotiate are you are you telling me that the statements were mere bargaining positions and were not truthful no they were they were truthful but there are a lot of assumptions baked into them the assumptions are if we continue and I would like more elucidation on this was that you were going to follow as I understand it the procedures the very complicated procedures for both the field work and the processing were worked out over a many many year period in great detail uh including backstops and checks and and so on and my understanding is that the in the two days or three days that the um replan was put together um a fair number of those or some number of those backstops and and um and checks and so on were eliminated so when you say and I'd like to know specifically why that seems useful but the net result is that to finish it by December 31st you're not going to do what you plan to do over many years is that accurate I I don't think that's accurate I think if you look again at Mr. Fondo's declaration which the district court refused to consider uh but if you look at uh Mr. Fondo's declaration he explained some of the ways we got there so for example for field collection in particular right to move from October 31st to September 30th they got some enumerators they made them work longer hours they set up bonus structures and overtime so that as he declared the same also eliminated some of the steps um that seems to be primarily what they did in order in other um you would use some IRS numbers instead of um doing any on the ground checks and so on and it seems to me there were a series of shortcuts um that were built in uh that which were not what the very um long-term and intense planning thought was necessary so uh you are correct that some of those were elements of what's being called the replan which I think just underscores that it's not one decision it's many but since the TRO we reversed all of those steps we went back and did six visits and by the way it was six to one only for vacant houses so the idea is if there if an address is vacant you visit it once to confirm I thought there were a couple different iterations there there are a few others you know there were like re-interviews and things like that we went back to the original plan once the TRO was entered and we we haven't gone I didn't see that anyplace in the record how do I know that I mean I believe you but is it anywhere in the record uh so I I don't think it's in I don't think we filed that document on the appellate papers it is in the district court docket and um I don't have the docket number but it would have been I I suppose uh maybe a day after the TRO was entered a day or we filed a statement in the district court saying all the ways in which we're complying with the TRO and it included the fact that we've gone back to six visits we've gone back I have another question about the uh the response to the clarification order and the sending out of the email that says we're going until October 31. Um there has been a great deal of confusion around the date of finalizing this phase of the census and it it seems to me that that email even though it was required by the district court changes the calculation a bit as to reliance interests and expectations and um the sort of back and forth of September 30th, October 5th, October 31st and how do we how do we deal with that analytically in your view? Uh I don't think it should play a role it would be remarkable for a district court to order an agency to violate a lawful binding statutory deadline then order the the agency on no excuse me counsel I'm not talking I'm not talking about December 31. I'm talking about the email that said we're going to continue our process until October 31 and that's what I'd like you to address. Yes and and what I'm saying is it would be remarkable for a court to order the agency to send out an email like that when there's no in our view legal basis for it and then bootstrap that into saying well now it's too late because she ordered it under pain of contempt and we're here you know three days later on appeal it's too late. I don't think you can bootstrap in that fashion any confusion. I'm not saying it's too late counsel I'm asking you how that affects the because there's a balancing for reliance interests of people and and what I'm struggling with is how if at all that plays into the calculus and you're saying it's completely irrelevant even though the entire world has now been told that it's October 31. Look I I don't think the district judges I don't think there should be you know cognizable reliance interests on a district judge's order that we're appealing but if you're going to take into account you know facts on the ground I would say take into account the fact that as of last night we are at 99.6 percent households enumerated uh in this census as of last night that's as good in every state in every state counsel that's nationwide and we are in I'm asking a different question how many states have not met the goal I am trying to answer 43 states plus DC and Puerto Rico are at or above 99. Four states are at or above 98 and the remaining three are above 97 as of last night the lowest state is Louisiana at 97.3 and they are an amici in this court telling you to stop the field operations today so that we can go to post-processing and get all the downstream things moving and we can at least have a hope of meeting the statutory deadline we are as good as the previous few censuses in terms of household enumeration completion and there is no basis to second guess the agency's judgment right now the district court's Judge Breslin you've got a question I won't interrupt you all right my question is um if you are following the original protocols which I did not realize and if um so what is the practical effect of extending towards to October 31st when you're finished you're finished now I think the main problem may be with self-reporters because they've now been told that they have till October 31st so there may be more people who will come in by October 31st is that why I mean otherwise um you're if you're in the states that you're done you're done right no no I I don't claim to understand all of it but there's there's there's a lot of post-processing that requires all the data to be closed there's something called geolocation and there are things like if you need to correct for example duplicate records somebody lived in state a in March moved in April to state b they might have filled out two forms or they might have incorrectly listed themselves in state b when they should have been counted in state a because that's where they were living on April 1st our post-processing procedures detect those correct them and you can't do that I'm told until the entire nation is closed down all the data is in only then can you begin that sort of correction post-processing that's what I'm told and so every day that we're sitting out in the field is a day we're going to lose from post-processing and puts uh completion of the census by the December 31st deadline in serious serious jeopardy but no you just said serious jeopardy rather than impossibility uh the the bureau people said it was impossible to be both accurate up to the standards of the bureau and meet that December 31st deadline they've been saying that for at least a half a year I mean certainly but that I think those statements were predicated on business as usual and not the extraordinary measures that uh Mr. Font no details as to what they did to speed things up I've got another question and that is uh the record tells us that the decision to adopt the replan did not come from within the bureau it came from someone fairly high up within the Department of Commerce do we know who that person is uh I'm not sure we necessarily know I assume it's coming from leadership but as the Supreme Court said somebody knows but you were unwilling to tell the district court who who made that direction so I think some of the emails suggest that the secretary made the decision and that's entirely proper as the Supreme Court said in Wisconsin against New York the Secretary of Commerce is charged with administering the census and the fact that he overrules his subordinates is of no moment and I think that principle holds here uh if I might reserve for rebuttal yes you may thank you and we'll hear from the other side morning your honors may it please the court I want to start with the question Judge Fletcher that you asked about the balance between accuracy and the deadline during the entire presentation there was no discussion of the constitutional requirement that they produced on December 30 they produced not just a report but one that actually represents the complete and accurate census and so to go back to where Mr. Joshi started in terms of what the district court actually ordered they act as if the court ordered them to violate the law but in arguing that forget that the law also includes a requirement that is both statutory and constitutional to produce an accurate and complete count and what the district council is as far as I can tell there is neither a constitutional nor a statutory statement of exactly what that means whether it 9.6 or at least 98.8 in every state or those those are are not specified statutory requirements are they they are not the court didn't so so accuracy accuracy is a judgment call and it's somewhat amorphous is it not as distinct from the deadline which is specified so so I think two points on that one is the fact that it doesn't specify the level of accuracy in the statute doesn't mean that an accuracy requirement does not exist and I don't take the other side to dispute the fact that there is a duty to complete an accurate census we could talk about what that means but all the district court held was that that was something that the agency had to consider and had to sufficiently consider in deciding it was going to cut the timeline in to meet this internal reporting deadline that is the basis for the district court's decision they like to make it seem like the district court created some sort of free-floating accuracy requirement all the district court did was look at the administrator record and look at the multiple worst statements by bureau officials saying we know we have this obligation for accuracy we cannot meet that obligation however you want to define it we cannot we're now being told that they're on the ground number as to what has actually been accomplished as of today we're just told and I have no idea whether it's true um that those numbers comport with as to the field operation um what has been done last several census I don't know what though I forward projection now we have actual on the ground um as to this part of it okay um and the question is um what do we what can we do now that says that there is currently at this stage for this stage an accuracy problem so a few responses that if I could try to get through them I think the first point is when you're talking about an EPA claim what happens after the fact doesn't speak to what was before the agency at the time the second point I would there's a little bit of a glitch on your um sound you I didn't quite hear what you said oh apologies um what I was saying is for an APA claim whatever happened after the fact doesn't speak to what was before the agency at the time it made its decision on August 3rd to pull back the dates and if you look back but it is and so I'm happy to address it directly I would say that the uh numbers that they are giving you do not show the same level of accuracy in prior censuses by any means and so let's look let's start with September 30 the date that field operations were supposed to end under the replan on September 30th there were 16 states and the District of Columbia that had not reached 99 16 states even today they say and the latest numbers I had uh had nine states that had not met 99 and remember the Bureau's own statement of what is required for accuracy was that every single state hit 99 that's exactly what happened in 2010 and then I want to talk suppose we were to die this day in October 10th they come in and say okay now all all states are 99 percent stop then in other words they still have to keep going for October 31st so so I think the 99 percent what they have done in past censuses and if you want to look back to the COVID plan what they were planning to do with the COVID plan was they don't just stop counting at the COVID plan said they were going to keep counting until they got to they weren't going to close out until they hit 100 or hit the relevant deadline and if they needed to extend it they would do that to get to the 100 percent let me ask you a question about that interim deadline question let's say that the uh the stay is granted with respect to October 31st continuing the on the ground operations to continue counting people until October 31st what difference does it make in terms of the accuracy question whether there is also a necessity to blow the December 31st in other words suppose they are able to get you know 24 hours at a whole bunch more computers than they now have and they can make it by December 31st to massage the data that they get by October 31st why would that be a problem from your perspective in other words I don't really understand the relevance of requiring them to ignore the December 31st as a goal if if they can do it so I think two points on that I think the one thing I would point out is the data processing is really important under the COVID-19 plan they had given themselves six months to do data processing under the replan they're already down to three months it is an extremely complicated process that has to be done sequentially but that's a practical question that's not really a legal question if they're required to keep doing the on the ground work and then do the what the end point is of that I think as a practical matter you are right and I think it goes to a larger point which is when they focus on violating the statutory deadline that deadline is still several months away Congress can still act when they decided in August to change the timelines that deadline was five months away and I think as your honors pointed out the suggestion that all of a sudden they realized that Congress was not going to act or the suggestion that the COVID-19 plan was at all contingent in any relevant respect on Congress acting is contrary to the evidence in the record when they adopted this COVID-19 plan and they adopted the timelines they like to call them target dates now they were not target dates they were deadlines they told everyone in the field they told the entire public you have until October 31st to respond to the census they went out in terms of the injunction and the stay of the injunction again as you say the deadline is close to three months away so there doesn't seem to be an emergency of any kind or irreparable harm with regard to it really on either side in the sense that what will happen will happen and this case is going to go to a merits panel on the preliminary injunction but the continued existence of the injunction and joining the December 31st deadline doesn't seem to be necessary either to your irreparable harm or from the government's point of view really on the state necessary to their irreparable harm in the sense that there is time to deal with that both as a practical matter on the ground maybe it will work or as a practical matter on the ground maybe they can go to Congress now or when it is apparent that they cannot do it or as a practical matter with regard to the court because we're going to hear the case on the merits of the injunction before that so why should we on the stay um why shouldn't we on this day enjoin at least that part of the the um or stay at least that part of the injunction uh as in as as unnecessary to meet your irreparable harm i guess because i think the two the two are linked together and this may be one of the rare areas where both sides um agree just to some extent i mean the government is on record now i mean they were on record nearly a record now saying if we're in the field a day past september 30th we can't meet the deadline they're now also on record saying if we're in the field a day past today we can't there's no urgency what's the urgency in regards to to enjoining that deadline i mean i think they would say the urgency is is the two are not completely separate from one another that it's a sequential process and that they have to start i'm positing that we that we the possibility that we stay only that i understand i guess october 31st deadline but we just keep heads off the december 31st and i think i would i would suggest that as i understand it they have to start data processing on november 1st and so maybe there's time between now and then but the processing part of it is sequential and they give themselves a certain number of days to do the different parts of that post-processing um process and so i think everything else i mean well i mean and that really is counsel counsel isn't there a difference isn't there a difference between the agency's own practical needs uh and a court telling the agency to ignore a statutory deadline in other words it may be as a practical matter impossible but it strikes me as legally different to have a court order that i don't know if i'm making my point clear but if um end point deadline if there's only the october 31st date then it's up to the agency they can meet it if they turn the world upside down they can ask for more time from congress or they can do what's been done in the past by other agencies and other censuses which is to miss the deadline and seek approval afterwards there are many many options but there it seems to me not for the court to say what those are and it doesn't really change what will happen does it other than in this theoretical way well i think only only in the sense that that accuracy matters and so that the notion that they would even try to compress data processing further from six months to three months to two months is is extremely troubling in in and of itself and it's that the other difference is that the on the ground field operation once it stops everybody seems to agree is it can't be it can't be redone um if you're manipulating if you're calculating and and you make a mistake you can fix it right in other words that's not unfixable in the same way even even if it turns out they had some major glitch they can turn around after the fact and say you know we had a major glitch that number is no good uh you have to give us a chance to fix it it's not the same thing it's not it's not something that can't be repaired well i certainly agree with that and and i think you know it goes to the irreparable harm point that that we made which is if you if you stay the of enumerators and that's something that that you really practically can't go back from they're effectively trying to get their merits relief on on a say so i i do agree with that i i think in terms of the district court's decision if we want to talk about remedy i mean i think on the on the merits um the record in this case is as clear as it can be in the in the district court the government said that the documents speak for themselves and i think they most certainly do um but focusing on the remedial point i mean really the remedy that the court granted here is no different than the remedy that the supreme court granted in the regent's case in daca council can i interrupt and i want to come back to what's been bothering all three of us and that is this december 31st deadline that appears to be ordered i have trouble understanding why your clients care i understand exactly why they care about the data collection deadline but i have trouble understanding why they care so much about that it be in an order that the processing be finished by the 31st because it's clearly your client's position that they want an accurate census and if it turns out that the that the census bureau can be both accurate as to data collection by collecting it through the end of october and accurate as processing by doing it by december 31st well so much the better but if they cannot be accurate with respect to the processing i should think would be in your client's interest to allow the bureau to do what it thinks it needs to do to process that data when it's closed the data collection process period data collection period october 31st so i have trouble why you are insisting that you want the december 31st date it's because everything in the record shows that they cannot get the data processing done uh in time and come up with accurate results and if i could just take a minute but that's exactly my point so if it shows that they cannot finish the data processing accurately by december 31st why are you insisting that they do that oh oh sorry we're not insisting that that they do that by any means we think they should take the time that they've provided but but you've got a court order that appears to order them to finish the processing by the december 31st and the question we have right now is whether or not you should give a temporary it's actually the it's it's the opposite of that it forbids them from meeting the december 31st even if they can oh i'm sorry right and so the the articulation i mean if you look at the district court's clarification order and it's in our supplemental appendix at page four it explains the relief that the district granted what it did was vacate the timeline in the replan which by matter of law reinstituted the timeline that was in the covid 19 plan until the agency corrects the legal defects that's another reason why it would seem on the state um that it may make sense um to stay that deadline because it's contingent uh as in the sense as i understand it that's a next week came up with a comprehensive explanation of why um they did what they did and why their timeline makes sense and why they can finish it by december 31st accurately um then the injunction when did you include them is that right because essentially what she's saying is go back to the agency and give us an explanation of what you did and why you did it and why it works i i think that's right i guess my concern here and i don't want to overstate it because obviously keeping them in the field right now is the most important thing but my concern is is that the the defendant's position in this case has shifted dramatically um over time i mean if you look at our supplemental addendum and i know the defendants like to pretend that all of the statements saying we can't do it uh happened before the replan and that suddenly in four or five days they found a way to cut the time in half and and do everything accurately but if you look at our supplemental addendum four months they were saying we can't get it done by the statutory deadline we can't produce an accurate and then something will happen i mean but but the real question is whether the court should be in the middle of that now three months early um the if they can't do it they won't and if they so they either will go to congress or as judge graper said or they will blow the deadline or they will do part of it um but but we don't that's all quite contentious at this point and i guess the other the other thing i would you know to go back to in terms of case law i do think the region's case of the remedy here that the district of granted is is on all fours with that case i mean in some ways it really is sorry the region's case the DACA decision in in in regions what the supreme court did was it affirmed the remedy granted by the district court which was to vacate the DACA rescission which reinstated the DACA plan this is the plan that the attorney general had said was illegal uh and so it's comparable in in that respect well counsel that's that's sort of the norm in an APA case if there are a series of rules and you and you uh vacate the last one the previous one ordinarily goes into effect but there is a countervailing consideration here potentially about the separation of powers question where congress has told the agency do this by a certain date and that seems to me different uh from the DACA case which didn't involve that kind of timeline problem well i think two things one is i don't know that a statutory deadline is any different than any other statutory command and the argument in the DACA case was that DACA violated um the statute and also a constitution and so i'm not sure that there's a difference between a timeline and a different uh provision but i think the other thing i would say is that the COVID-19 plan that goes back into effect and you're absolutely right this is the traditional remedy the COVID-19 plan extended the deadlines and i know they like to say it's contingent on congress acting but they were implementing it for months with those extended deadlines uh in place they were telling everyone that these were the deadlines and this is exactly what they were going but also it's just a deadline right so if they had got under the COVID plan they could have gotten it done by December 31st right it said in other words it's a deadline you can beat a deadline right so it wasn't built in that they were going to violate the December 31st they said they weren't going to be able to do it but it wasn't it was still just a deadline that is that is theoretically true but as a practical matter there is a reason why everyone who looked at this was saying you can't do it i mean and i realized my time is up i could send i mean we are in the middle of a global pandemic the census is a very hard thing to do in the best of times of course in April when they were faced with this after spending a decade of planning coming up with the operation and a month trying to figure out what to do in the face of the pandemic they realized they needed more time they didn't change the operations i mean again this is everything is tested it's retested it's planned out they kept the exact same operations in place all they did was move the deadlines and then i have one other question was josh correct when you said that the current record is that they they eliminated all their shortcuts and went back to the original procedures the record is not clear on that and i actually am glad you gave me the opportunity because i think that is a real concern with the 99 figures that they like to use it only means something if the metrics are the same and there is no question that the replan changed the metrics it changed how often to go to administrative records it changed how often they go to proxies it changes they were negative they changed all that i didn't see that in the record but that's what he said it is not well what is in the record is that during the pendency of the tro they went back so that's between September 5th and September 24th but the record says nothing about is what they did before that date or importantly what they've done after that date so what they've done since September 24th and we said this in our opposition in this court we pointed out that they're using different metrics than they planned in the 2018 operational plan and different metrics that they had used in previous censuses and at least in the reply there's nothing in there uh denying what what we pointed out and we think that is really critical because if you're going to it's nothing like prior censuses it's nothing like what they committed to do this year but if you are going to look at that the metrics matter but that does not come in a weird direction because they do it till October 31st they still don't know what they're going to do to October they can still do it the same way they've been doing it whatever that is theoretically yes but i mean the entire reason they gave themselves more time in the COVID-19 plan was so they didn't have to change what they had planned to do when they adopted this decade long plan they had came up with very specific rates how many times they're going to the houses when they're going to look at administrative records i mean all of this is very detailed in the operational plan and the only reason they cut back on it with the replan was because they had cut an entire month off of their schedule so of course something had to give and what gave were these quality control control but the injunction really only goes to the timing it doesn't say maybe it should have said but i don't think it says that in restoring the COVID-16 deadlines you'll have to go restore the COVID-16 procedures well that is true and i think i bring it up because they they like to point to the 99 percent and say everything's going wonderfully on the ground and we're almost done and so there's no need to to extend it but i think one of the they said here today for the first time that they're still following what the TRO said and they're still using the COVID-19 plan metrics but i also didn't see anything in the record to that effect thank you thank you counsel you've exceeded your time by quite a bit and we'll hear rebuttal from Mr. Joshi thank you your honor appreciate that i i do want to say that just as a factual matter we haven't gone back to the since the TROs ended and the PI was entered we haven't gone back to the other metrics i also want to just clarify as a factual matter you know when you visit houses it's like up to six times but the point is once you get a response from the house you don't keep going back that's under the normal plan too so i can assure you that the metrics the way we're calculating these 99 percent numbers etc is exactly the same way we've always calculated it that's what i have been informed i specifically asked that question of the agency and they told me yes we are calculating it the same way um i i there were a lot of questions about whether you could keep the october 31st deadline part of the injunction and vacate all the rest i think that's going to be really problematic for a couple of reasons first as a practical matter you'll impose can i interrupt for just a minute so we're just being asked to stay we're not being asked to vacate we're not a merits panel so the only thing we're doing is staying pending appeal i apologize for the misstatement yes uh to the extent the panel is considering staying uh everything except the october 31st deadline you know to stay in the field part of the injunction i don't think that would work because counsel i think you misunderstand i at least on my part what the question was if the only thing stayed is the december 31st date everything else would uh be the covet 19 plan i think you reversed you reversed the question so yes but let me try this again if if we are forced by whatever procedural means to stay in the field through october 31st that would impose irreparable harm on us because it would make it impossible to meet the december 31st deadline that congress has set and the fact that we were all having a lot of conversations about percentages and follow-up visits and you know all of these details i think just drives home the point that congress has made a judgment there's always a trade-off between speed and accuracy and congress and the statute has said you have nine months do the best you can the bureau is saying but what we're letting go of here is that there's a i mean i i've been thinking that there is some sort well the president actually said in april there is simply no way we can do this it's an act of god and we can't be expected to do it uh and you're leaving out the fact that completely unpredictably um for eight weeks nothing was done because of a an international pandemic uh and safety issues and the safety issues are obviously not cured as we can tell by the fact that the president is in the hospital uh in terms of the people who are trying to get all this done so the fact is that whatever schedule is in the statute it obviously didn't contemplate this now that isn't to say that we should enjoy this deadline but it's to say that everybody has to be cautious and realistic here and the notion that congress really meant that you have to do it in nine months even though there's an international pandemic and people are dying and nobody wants to go house to house and and people and so on and so on uh as was recognized by the covid plan uh seems to me to be um an assumption that isn't necessarily married i mean you you've completely left that out of your whole discussion look i i appreciate that you or i or maybe many people might think that we should take more than nine months to do the census but congress is the one essentially a force majeure which nobody could have predicted yeah there's no force majeure clause in the constitution well i believe there's an implicit one actually well the constitution grants congress the discretion and the supreme court has said this to conduct the census as it may determine it could be that congress wants to say sensibly wants to say well let's see if you can do it if you come to us in november and you say uh or or december 1st and say you know what we've tried we can't do it that's a different story than projecting it at nine months in advance it would be remarkable to call it arbitrary and capricious because an agency is you know depending on a change in the law the fact is under the constraints of the law as it is today no one has said that we acted arbitrary and capriciously within the statutory framework right all their all the judge said was that we should have considered going outside of the statutory framework so we could get a better census in light of conditions and and the problem of course here is that this was a very strange operation because on january 29th everybody inside everybody inside the bureau was saying we can't get it done and then some you know deus ex machina comes in from outside and says well you're going to come up with a plan and in three four days uh nine 10 months worth of uh or 10 years worth of planning is thrown out the door and they change everything uh and say okay maybe we can do it uh after all so in six months turns into three months in three days and so on it's not a couple things it's it was actually five months that turned into three months not six but also the agency asked for half a billion dollars that they're paying enumerators and so as we have in the field matches what would have been the hours in the field under i actually didn't see that i know i tried i'm sorry i believe that is in uh paragraph 86 i might have that wrong of the declaration that would be at addendum page 108 i'm i'm sorry i apologize addendum page 110 paragraph 86 um of of mr fontenot's declaration now look the the bottom line is that for better or worse congress sets the deadline in 1930 and 40 and 50 they told the bureau to spend only two weeks enumerating right like congress gets to decide these things congress has said get it done by the 31st in the bureau's expert judgment if we're to have a hope of getting there we need to get out of the field today and i don't think it's your place my place anyone else's place to second guess that judgment and there's nothing in the record to second guess that judgment the fact is today mr fontenot is saying in a sworn declaration that if we get out of the field today we believe that we can meet the statutory deadline for at least the the residence criteria it's called to get a set of numbers to the president we can partially implement the presidential memorandum that's been enjoined in other litigation but the point is we believe we can meet the december 31st deadline if we get immediate relief and the only thing i will ask this panel is that we would need that relief today but if you disagreed with everything i said here today i would just ask that you issue that decision as promptly as possible so that we have at least some time to go to the supreme court and try to get relief there but of course we think you should stay the whole injunction thank you thank you counsel we appreciate the arguments that both of you have given us on such short notice and the case just argued is submitted for decision and we are adjourned this court for this session stands adjourned
judges: Graber, W.fletcher, Berzon